UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **RONALD SATISH EMRIT,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:23-cv-00828 |
| ) | Judge Trauger |
| **THE GRAMMY AWARDS, d/b/a The** ) | |
| **Recording Academy/NARAS,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

Plaintiff Ronald Satish Emrit filed a pro se complaint against The Grammy Awards d/b/a The Recording Academy/NARAS[1] and submitted an in forma pauperis application.[2] (Doc. Nos. 1, 2.) Because the plaintiff adequately demonstrates that he cannot pay the full civil filing fee in advance without "undue hardship," *Foster v. Cuyahoga Dep't of Health and Human Servs.*, 21 F. App'x 239, 240 (6th Cir. 2001), the application (Doc. No. 2) is **GRANTED**.

"Pro se complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and [they] should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). However, the court must review and dismiss any complaint filed in forma pauperis if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B);

---

[1] The court presumes that the plaintiff intends to sue The Recording Academy (formally known as the National Academy of Recording Arts and Sciences), the presenter of the annual Grammy Awards, which is alleged to have an office in Nashville, Tennessee.

[2] Before any action by the court, the plaintiff filed an appeal. (Doc. No. 4.) The Court of Appeals for the Sixth Circuit dismissed the appeal for lack of jurisdiction (Doc. No. 6), and this action is again before the court.

*see also Ongori v. Hawkins*, No. 16-2781, 2017 WL 6759020, at *1 (6th Cir. Nov. 15, 2017) ("[N]on-prisoners proceeding in forma pauperis are still subject to the screening requirements of § 1915(e).").

I. **Legal Standard**

The court applies the standard for Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). That is, the court views the complaint in the light most favorable to the plaintiff and takes all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)). The court then considers whether the factual allegations plausibly suggest an entitlement to relief that rises "above the speculative level." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

II. **Analysis**

The complaint brings a claim of racial discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"). (Doc. No. 1 at 6.) Title VII "prohibit[s] wrongful discrimination in the [n]ation's workplaces." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 342 (2013). The statute makes it unlawful for an employer to discriminate against any individual with respect to his "compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Claims brought under Title VII "cannot go forward" unless the defendant qualifies as the plaintiff's employer. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000) (citing *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997)).

The complaint alleges that the plaintiff—an alleged presidential candidate "recognized by the Federal Election Commission"—"experienced racism" when the defendant organization (a)

terminated the plaintiff's membership in 2010 due to "white supremacy" and "a racist Latino man from Los Angeles," and (b) later declined the plaintiff's request to rejoin the organization in order to "bring his Ukrainian fiancé to the Grammy Awards." (Doc. No. 1 at 4-6.) Although the plaintiff alleges racial bias, he does not allege that the defendant is, or ever was, his employer. *See id*. In the absence of an employer-employee relationship, the complaint does not state a colorable Title VII claim. *See, e.g.*, *Minnis v. McDonnell Douglas Tech. Servs. Co.*, 162 F. Supp. 2d 718, 731-32 (E.D. Mich. 2001) (dismissing Title VII claims because there "[t]here was no "employer-employee relationship" between the plaintiff and defendant).

The complaint also brings a state law claim for intentional infliction of emotional distress ("IIED"). (*See* Doc. No. 1 at 7-8). A Tennessee plaintiff must plead the following elements of an IIED claim: (1) intentional or reckless conduct; (2) conduct so outrageous that it is not tolerated by civilized society; and (3) conduct resulting in serious mental injury. *Z.J. v. Vanderbilt Univ.*, 355 F. Supp. 3d 646, 685 (M.D. Tenn. 2018) (citing *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). Here, the plaintiff's claim that the defendant terminated his organization membership does not plausibly allege conduct that is "atrocious," "utterly intolerable," and "beyond all bounds of decency." *Id*. (quoting *Goldfarb v. Baker*, 547 S.W.2d 567, 569 (Tenn. 1977); *see also Knisley v. CEC Ent., Inc.*, No. 3:19-cv-00495, 2019 WL 10949409 (M.D. Tenn. Oct. 23, 2019) ("Cases in which IIED claims have been supported have often included elements of violence, humiliation, and/or severe emotional trauma.") (citing *Cossairt v. Jarrett Builders, Inc.*, 292 F. Supp. 3d 779, 789-90 (M.D. Tenn. 2018)). Moreover, the plaintiff fails to allege that the membership termination caused mental injury of any kind, let alone harm "so severe that no reasonable person would be expected to endure it." *Z.J.*, 355 F. Supp. 3d at 685 (citing *Arnett v. Domino's Pizza I, L.L.C.*, 124 S.W.3d 529, 540 (Tenn. Ct. App. 2003)). In light of the severity of the circumstances needed in

3

order for a plaintiff to prevail on an IIED claim, even taking the assertions in the complaint as true, the plaintiff's claim of IIED must be dismissed. *See id*. at 685 n.34 (explaining that trial courts in Tennessee "have been empowered to 'reasonably dismiss this legal theory as a matter of law'") (quoting *Lane v. Becker*, 334 S.W.3d 756, 763 (Tenn. Ct. App. 2010)).

Finally, the plaintiff appears to bring a state law claim for breach of contract. (*See* Doc. No. 1 at 7-8). In Tennessee, to allege a breach of contract a plaintiff must plead (1) the existence of an enforceable contract, (2) non-performance amounting to a breach of the contract, and (3) damages caused by the breach. *Thomas v. Meharry Med. Coll.*, 1 F. Supp. 3d 816, 828 (M.D. Tenn. 2014). The complaint, however, does not allege the existence of any contract between the parties concerning organization membership. (*See* Doc. No. 1). Accordingly, the plaintiff fails to state a colorable breach of contract claim.[3]

### III. Conclusion

For these reasons, the plaintiff has not stated a colorable claim against the defendant. Accordingly, the complaint is **DISMISSED**. The plaintiff's Title VII, IIED, and breach of contract claims are **DISMISSED WITH PREJUDICE**. Any claim under the U.C.C. or Restatement (Third) of Torts is **DISMISSED WITHOUT PREJUDICE**. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b). Because an appeal would not be taken in good faith, the plaintiff is not certified to appeal the judgment in forma pauperis. 28 U.S.C. § 1915(a)(3).

It is so **ORDERED**.

_____
Aleta A. Trauger
United States District Judge

---

[3] The Complaint also mentions in passing Article 2 of the Uniform Commercial Code ("U.C.C.") and the Restatement (Third) of Torts. (Doc. No. 1 at 7-8.) However, the plaintiff has not specified or plausibly alleged any particular claim thereunder.